IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.   17-115 (GJP) |
| v. | : | |
| ERNESTO DELCID-GUDIEL,<br>    a.k.a. "Ernesto DelCid" | : | |

## GUILTY PLEA MEMORANDUM

I.   **INTRODUCTION**

On March 2, 2017, defendant Ernesto DelCid-Gudiel was charged by Indictment with one count of reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).   DelCid-Gudiel, a native and citizen of Guatemala, was deported from the United States on or about October 5, 2016, and was subsequently found in the United States, having knowingly and unlawfully reentered the United States without first applying for admission to the Attorney General of the United States or his successor, the Secretary for the Department of Homeland Security.   DelCid-Gudiel, through counsel, Elizabeth L. Toplin, Assistant Federal Defender, has indicated a desire to plead guilty to the Indictment pursuant to a plea agreement.   A change of plea hearing has been scheduled for Wednesday, May 17, 2017 at 10:00 a.m.

II.   **ELEMENTS OF THE OFFENSE**

Title 8, United States Code, Section 1326 provides the following in pertinent part:

>   (a) [A]ny alien who –
>   (1)   has been denied admission, excluded, deported, or removed . . . and thereafter
>   (2)   enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for

>>admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . .
>[shall be guilty of an offense].

To prove a violation of 8 U.S.C. § 1326(a), the government must prove the following essential elements:[1]

> 1. The defendant is an alien;[2]
>
> 2. The defendant was deported;
>
> 3. Defendant thereafter entered, attempted to enter, or was found in the United States; and
>
> 4. Defendant did so without having obtained permission from the Attorney General or his successor, the Secretary for the Department of Homeland Security, to reapply for admission.

See United States v. Flores-Peraza, 58 F.3d 164, 166 (5th Cir. 1996); United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994).

### III. MAXIMUM PENALTY

The statutory maximum penalty for a violation of 8 U.S.C. § 1326(a) is two years' imprisonment, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment. Subsection (b)(2) provides for a twenty-year maximum sentence when the prior removal, as here, "was subsequent to a conviction for commission of an aggravated felony."

---

[1] Section 1326 sets forth a general intent crime and the government need only prove that an alien's act of entering the United States was voluntary. Voluntariness and general intent to enter the country can be inferred from the alien's presence in the United States and need not be alleged in the indictment. United States v. San Juan-Cruz, 314 F.3d 384, 390 (9th Cir. 2002); United States v. Berrios-Centeno, 250 F.3d 294, 299-300 (5th Cir. 2001).

[2] The term "alien" means any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3).

IV.     **FACTUAL BASIS FOR PLEA**

If this case were to proceed to trial, the government would be able to prove each element of the charged offense. In summary, the government would prove the following facts: According to his alien file and statements he previously provided to federal immigration authorities, defendant Ernesto DelCid-Gudiel is a native and citizen of Guatemala.

On September 23, 2012, DelCid-Gudiel was arrested in California by the Kern County Sheriff's Office and charged with Battery: Spouse/Ex-Spouse/ Date, in violation of California Penal Code § 243(E)(1).  An ICE agent encountered DelCid-Gudiel, interviewed him to determine alienage and deportability and determined that he was a native and citizen of Guatemala who entered the United States without being inspected or admitted by an immigration officer.  On October 3, 2012, the Battery case was dismissed.  On October 5, 2012, ICE officers served DelCid-Gudiel with a Notice to Appear ordering him to appear before an immigration judge to show why he should not be removed from the United States.  The Notice stated that the hearing was scheduled for December 18, 2013.  He was released from ICE custody on his own recognizance, and on December 18, 2013, after he failed to appear for the hearing, an immigration judge ordered that he be removed from the United States to Guatemala.

On March 28, 2016, DelCid-Gudiel was arrested by the Bakersfield PD and charged with Burglary, in violation of CA Penal Code § 460(A), a felony.  He was convicted of Attempted Burglary-1st Degree in the Kern County Superior Court, and on June 13, 2016, he was sentenced to one year of imprisonment.  On September 26, 2016, DHS arrest and removal/deportation warrants were signed and DelCid-Gudiel was taken into ICE custody from Folsom State Prison on the same day.  On October 5, 2016, DelCid-Gudiel was deported to Guatemala via an ICE

Air Charter Flight departing from Phoenix-Mesa Gateway Airport in Mesa, Arizona. Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with DelCid-Gudiel's deportation and it contains his name, signature, photograph, alien number and a fingerprint.  The I-205 was also signed by the immigration officials who fingerprinted DelCid-Gudiel and witnessed the departure.  ICE officials also served DelCid-Gudiel with a Form I-294, Warning to Alien Ordered Removed or Deported, which warned him that he was prohibited from entering, attempting to enter or being in the United States at any time following his removal because he had been convicted of an aggravated felony.  The form also advised him that he was required to request and obtain permission from the Homeland Security Secretary to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by two to twenty years' imprisonment.  The I-294 was signed by the immigration official who served the warning and also contains the defendant's fingerprint, which was affixed on the day he was deported.

On January 24, 2017, ICE Deportation Officer Bryan Kendrick received a duty call from Pennsylvania State Police-Avondale.  DelCid-Gudiel was being detained for questioning by the State Police for domestic assault and non-consensual sexual contact with his girlfriend and was suspected of being a previously-removed aggravated felon.  During the State Police's questioning, DelCid-Gudiel presented a Guatemalan Consular ID card as a form of identification and was live-scanned, yielding a positive hit for an immigration encounter as a previously-removed alien.  Officer Kendrick reported to the Avondale barracks at approximately 10:00 p.m. to conduct a field interview of DelCid-Gudiel in order to determine alienage and deportability.  He identified himself as a U.S. Immigration and Customs Enforcement

Deportation Officer while displaying ICE-DHS-issued badge credentials. DelCid-Gudiel stated that he was a citizen and national of Guatemala by virtue of birth and that he did not possess any valid immigration document that would allow him to be in or remain in the United States. He also stated that he had been previously removed from the United States and that he re-entered the United States without permission. Kendrick took DelCid-Gudiel into custody and transported him to the Delaware County Correctional Facility for overnight housing. DelCid-Gudiel was not charged in connection with his girlfriend's complaint.

On January 25, 2017, Officer Kendrick transported DelCid-Gudiel to the Philadelphia ICE field office. With the aid of a Spanish interpreter, Kendrick read him DelCid-Gudiel his *Miranda* rights, which he agreed to waive by signing a waiver form in Spanish. In a Record of Sworn Statement, he stated that his complete and correct name was Ernesto DelCid-Gudiel and admitted that he was a native and citizen of Guatemala; that his parents were citizens of Guatemala; and that he was deported in approximately September of 2016. He further stated that he illegally entered the United States during the period of October 10-13, 2016 by walking across the border near Nogales, Arizona, and that he did not have any valid immigration document allowing him legally to reside in the United States. Finally, he admitted that he did not obtain permission from the Secretary of Homeland Security or the Attorney General to re-enter the United States after his removal.

According to a HSI Fingerprint Specialist, the fingerprint taken from DelCid-Gudiel subsequent to his most recent arrest matches the fingerprint on the I-294 from his prior removal. While the I-205's fingerprint was not good enough to compare, the I-205 contains his photograph and alien number, and is recent enough that Kendrick would testify that the person

he arrested is the same individual pictured in the I-205.

DelCid-Gudiel's A-file is devoid of any indication that he had ever re-applied for admission to the United States following his removal, and a representative of the United States Citizenship and Immigration Services ("USCIS") would testify that USCIS has no record of him applying for or receiving permission from the United States Attorney General or the DHS Secretary for admission into the United States after his removal.  At trial, this witness could authenticate the Certification of Non-Existence of Record, which reflects that no record exists of an application by him for permission from the DHS Secretary to reenter the United States.  The A-file also contains DelCid-Gudiel's current consular identification card issued by Guatemala.

### V. PLEA AGREEMENT

There is a written guilty plea agreement which will be presented to the Court at the time of the scheduled guilty plea hearing.  The defendant agrees to plead guilty to Count One of the indictment, charging him with Illegal Reentry in violation of Title 8, United States Code, Section 1326(a) and (b)(2).  The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.  At the time of sentencing, the government will move for a two-level departure from the Sentencing Guidelines pursuant to U.S.S.G. § 5K3.1 and the Early Disposition Program authorized for this district, if the defendant complies with the terms of this plea agreement.

The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum sentence:  Count One, reentry after deportation, in violation of Title 8, United States Code, Section 1326(a) and (b)(2), up to 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100

special assessment. The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years per count of conviction, without credit for time already spent on supervised release.

The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

Pursuant to U.S.S.G. § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed; and (3) the disposition contemplated by this plea agreement is pursuant to an early disposition ("Fast-Track") program authorized by the Attorney General of the United States and the United States Attorney for the Eastern District of Pennsylvania.

The parties agree and stipulate that: (1) pursuant to U.S.S.G. § 2L1.2(a) the defendant's base offense level is 8; (2) that pursuant to U.S.S.G. § 2L1.2(b)(2)(D), the defendant's offense level increases 4 levels because he has a prior aggravated felony conviction that occurred after his first order of removal; (3) that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under U.S.S.G. § 3E1.1(a); and (4) that pursuant to the authorized

Early Disposition Program in this district, the defendant is eligible for a 2-level downward departure.

The parties have no agreement as to the defendant's criminal history category. However, this agreement is conditioned on the defendant having fewer than 13 criminal history points. If the defendant has 13 or more criminal history points, or if the government discovers a conviction other than those disclosed to the defense prior to sentencing, the government shall have the right to withdraw from this agreement.

The defendant understands and agrees that this guilty plea agreement contains all of the terms, conditions, and stipulations regarding sentencing. If the defendant requests any downward departure or variance other than credit for time served in immigration custody following his arrest on January 24, 2017, or any other reduction or adjustment of sentence not specifically agreed to in writing by the parties, the government may withdraw from the plea agreement.

The defendant, who is not a citizen of the United States, understands that his guilty plea in this case will result in his being subject to immigration proceedings, and will likely result in him being removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the immigration consequences of his guilty plea. The defendant understands that the immigration consequences of this plea will be determined in a separate proceeding before the immigration authorities, and that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences of his plea, even if the result is his removal

from the United States. Therefore, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding: (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth above; (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines; (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; (4)that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel. If the defendant does appeal or seek collateral relief pursuant to this paragraph, no issue may be presented by the defendant in such a proceeding other than those described in this paragraph.

## VI.     CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for a guilty plea by the defendant to Count One of the Indictment charging defendant DelCid-Gudiel with reentry into the United States after deportation, in violation of Title 8, United States Code, Section 1326(a).   The United States also respectfully requests that the Court accept his plea of guilty to the Indictment.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


 s/NELSON S.T. THAYER, JR.
NELSON S.T. THAYER, JR.
Assistant United States Attorney

Dated:   May 9, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum has been served by first class mail and electronic mail upon the following:

>Elizabeth L. Toplin, Assistant Federal Defender
>Federal Community Defender Office
>Suite 540 West, The Curtis Center
>601 Walnut Street
>Philadelphia, PA   19106
>Elizabeth_Toplin@fd.org

>s/NELSON S.T. THAYER, JR.
>NELSON S.T. THAYER, JR.
>Assistant United States Attorney

Dated:   May 9, 2017